COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-107-CV

 

 

MARK HAIRE AND KAREN HAIRE                                         APPELLANTS

 

                                                   V.

 

NATHAN WATSON COMPANY                                               APPELLEES

AND
FUGRO SOUTH, INC.

 

                                              ------------

 

            FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction

In three issues, Mark Haire
and Karen Haire (collectively the AHaires@) assert
that the trial court erred in granting Fugro South, Inc.=s (AFugro@) and Nathan Watson Company=s (ANWC@) motions for summary judgment.

 

 








II.  Factual and Procedural Background

This is the case of the
floundering foundations.  In October
2001, the Haires purchased a home at 6202 Snow Ridge Court in the Hunter Pointe
subdivision of Arlington.  The Haires
bought the residence in Aas is@ condition from Prudential Relocation. 
Sovereign Homes Corporation (ASovereign@) built the
residence in question.  NWC was the
developer of the subdivision and according to NWC, it had no contractual
relationship, or any other relationship for that matter, with the Haires, and
had no role in the construction of the residence or its foundation.  According to the Haires, NWC, as developer,
had the duty of preparing the individual lots so that they could adequately
support a home.  Moreover, the Haires
claim that providing these services gave rise to the implied warranty that the
Haires= lot would be prepared in a good and workmanlike manner. 








The Haires alleged that in
late February and early March 2002, they began having structural problems with
their home, including cracks in the walls, uneven floors, and doors that would
not close properly.  Subsequent
investigations revealed excessive swelling of the soils beneath the home, and
that the home was not designed and constructed in a manner that would
accommodate this excessive swelling.  The
Haires claimed that because of these design and construction failures, their
home sustained major and irreparable damages to its foundation.

Hunter Pointe subdivision
contains numerous homes that have likewise experienced serious foundation
problems, resulting in substantial and extensive repairs for those homes.  Fugro was the geotechnical engineering firm hired
to perform soil analysis of the Hunter Pointe subdivision, including the Haires= residence, in the initial development stages of the subdivision.  This professional analysis purported to serve
as a basis for the foundation design of the homes within the subdivision.








The Haires= sales contract contained Aas is@ language in
both the body of the agreement and the attached Arider.@  By entering into the sales contract, the
Haires agreed in three separate places to purchase the residence Aas is.@  Also enclosed with the sales contract were
(1) the original homeowner=s disclosure, which detailed foundation concerns in the neighborhood,[1]
and (2) a copy of a report on the foundation by structural engineer George
Purdue noting previous foundation movement and resulting damage to the
house.  Finally, the Haires retained
their own inspector, who examined the foundation and offered his assessment
regarding the foundation and the maintenance that would be required.

The language in the Haires= contract, utilizing a Texas Real Estate Commission (TREC) form,
states the following:

PROPERTY
CONDITION . . .

 

 . . . D. 
ACCEPTANCE OF PROPERTY CONDITION: (check one box only):

 

[  ] (1) In addition to any earnest money . . .
.

 

[X]
(2) Buyer accepts the Property in its present condition; provided
Seller, at Seller=s
expense, shall complete the following repairs and treatment: REFER TO PRUDENTIAL RELOCATION RIDER.  [Emphasis added.]

 

The rider incorporated into the Haires= sales contract contains additional Aas is@
language.  Specifically, section 2 of
Prudential=s rider to
the purchase agreement (Arider@) states the following:

Condition
of Premises: Buyer understands that Seller is a relocation management company .
. . .  The Property . . . being sold and
purchased [is] not new, and [is] being sold Aas is@ -in
[its] present condition.  Buyer
acknowledges that Buyer is not relying on any representations, statements,
guarantees or warranties concerning the Property, made by anyone, prior or
subsequent to closing, including but not limited to, representations regarding
. . . the condition of the Property . . . . 
[Emphasis added.]

 

Further, section 5 of the rider states the
following:








Buyer=s Duty to Inspect/Test: Although the Property is being sold Aas is@ -- in its
present condition, Buyer has the right to
inspect or to have the Property inspected by others on Buyer=s behalf to determine the existence of defects, if any.  [Emphasis supplied.]

On September 3, 2003, the
Haires filed suit against NWC and Fugro, parties with whom they had no prior
relationship.  Fugro filed its answer on
October 23, 2003, and NWC filed its original answer on January 8, 2004.  On February 20, 2004, the Haires filed their
second amended original petition in which they alleged that NWC and Fugro were
negligent and breached implied warranties under the Texas Deceptive Trade
Practices Act (ADTPA@).








Fugro filed its motion for
summary judgment on July 12, 2005, and as grounds for the motion argued that A(1) the Aas is@ language of the sales contract precludes recovery; (2) there is no
implied warranty for professional services under Texas law; (3) the DTPA claims
are barred by the professional services exemption of section 17.49(c) of the
DTPA; and (4) Fugro has no duty to the Haires, thus barring their negligence
action.@  The Haires filed a response to
that motion on October 14, 2005. 
Following a hearing, the trial court granted Fugro=s motion for summary judgment on November 15, 2005.  Fugro=s no-duty ground relating to the negligence claim has not been argued
on appeal.      After the granting of Fugro=s motion for summary judgment, NWC filed its own motion for summary
judgment on November 15, 2005, and as its single ground for the motion, argued
that the Aas is@ language of the sales contract precluded recovery by the Haires.  After a hearing on NWC=s motion, the court granted summary judgment to NWC, and a final order
was signed on February 27, 2006.  This
appeal followed.

III.  Standing

Preliminarily, Fugro asserts
that the Haires do not have standing in this matter because they did not own
the property at the time the alleged injury occurred.  

A.  Standard of Review

Standing is a necessary
component of subject matter jurisdiction. 
Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 445B46 (Tex. 1993); Exxon Corp. v. Pluff, 94 S.W.3d 22, 26 (Tex.
App.CTyler 2002, pet. denied).  Subject
matter jurisdiction is essential to the authority of a court to decide a
case.  Tex. Air Control Bd., 852
S.W.2d at 445B46.  Whether a trial court has subject‑matter
jurisdiction is a question of law subject to de novo review.  See Mayhew v. Town of Sunnyvale, 964
S.W.2d 922, 928 (Tex. 1998), cert. denied, 526 U.S. 1144 (1999);  Pluff, 94 S.W.3d at 26.  Accordingly, we conduct a de novo review of a
trial court's determination of standing.  
Mayhew, 964 S.W.2d at 928.  


 

 








B.  Injury to Property

A person has standing to sue
when he is personally aggrieved by the alleged wrong.  Nootsie v. Williamson County Appraisal
Dist., 925 S.W.2d 659, 661 (Tex. 1996). 
A person has standing if (1) he has sustained, or is immediately in
danger of sustaining, some direct injury as a result of the wrongful act of
which he complains; (2) he has a direct relationship between  the alleged injury and the claim sought to be
adjudicated; (3) he has a personal stake in the controversy; (4) the challenged
action has caused the plaintiff some injury in fact, either economic,
recreational, environmental, or otherwise; or (5) he is an appropriate party to
assert the public=s interest
in the matter, as well as his own.  Nausler
v. Coors Brewing Co., 170 S.W.3d 242, 249 (Tex. App.CDallas 2005, no pet.).  Stated
differently, to have standing, there must be a real controversy among the
parties which will be actually determined by the judicial declaration
sought.  Tex. Workers= Compensation Comm. v. Garcia, 893 S.W.2d
504, 517B18 (Tex. 1995).

We now quote at length from a
sister court=s discussion
in Exxon Corporation v. Pluff:

[W]e must determine that Pluff had a cause of
action for injury to the property.








A cause of action accrues when a plaintiff first
becomes entitled to file a lawsuit based upon a legal wrong attributed to a
defendant.  Generally, a cause of action
for injury to real property accrues when the injury is committed.  The right to sue for the injury is a personal
right that belongs to the person who owns the property at the time of the
injury.  Therefore, without express
provision, the right does not pass to a subsequent purchaser of the property.  Consequently, a mere subsequent purchaser cannot
recover for an injury committed before his purchase.

 

94 S.W.3d at 26B27 (citations omitted).

C.  Application

The Haires alleged that
several months after they purchased their home they began having structural problems
in their house.  Thus, the damages the
Haires complain of occurred after they purchased the residence, and,
therefore, they owned the property at the time of the injury.[2]  

After reviewing the
requirements for standing, we hold that the Haires alleged to have sustained a
damage resulting from wrongful acts of Fugro, that there is a direct
relationship between these alleged injuries and the claim asserted, that the
Haires owned the property in question at the time the injuries occurred; and
therefore had a personal stake in the controversy, and that the alleged
wrongdoing caused the Haires= damages.  Hence, the Haires
have standing in this matter and Fugro=s preliminary issue is overruled.

 








IV. Collateral Estoppel 

Because it also presents a
threshold question we shall next address NWC=s assertion that the Haires are prevented from suing because of
collateral estoppel.  NWC bases this
argument on the assertion that the Haires were somehow in privity with the
homebuilder Sovereign.  Sovereign
previously sued NWC regarding the Hunter Pointe subdivision, and NWC filed a
cross action against Fugro asserting indemnity. 
The end result was that Sovereign lost at trial.  

NWC=s claim of collateral estoppel fails for several reasons.  First, under Texas Rule of Civil Procedure
94, collateral estoppel must be affirmatively pled.  Tex.
R. Civ. P. 94.  Here it was
not.  Furthermore, the Haires= home has not been the subject of any prior lawsuits.  

Moreover, we cannot envision
any rationale that would place the Haires in privity with Sovereign.  Privity connotes those who are in the law so
connected with a party to the judgment as to have such an identity of interest
that the party to the judgment represented the same legal right.  Amstadt v. U.S. Brass Corp., 919
S.W.2d 644, 653 (Tex. 1996).  However,
privity is not established by the mere fact that persons may happen to be
interested in the same question or in proving the same facts.  Ayre v. J.D. Bucky Allshouse, P.C.,
942 S.W.2d 24, 27 (Tex. App.CHouston [14th Dist.] 1996, writ denied).








Here, the Haires did not
purchase the residence from Sovereign and had no other relationship with it
whatsoever.  Thus, we are unable to say
that the Haires= connection
to Sovereign, if any, was such that their interests were identical.  See Amstadt, 919 S.W.2d at 653.  Furthermore, just because the Haires may have
been interested in the same questions or proving the same facts as Sovereign,
this alone does not establish privity.  See
Ayre, 942 S.W.2d at 27.

Therefore, we hold that the
Haires were not in privity with Sovereign and, thus, their claims against NWC
are not barred by collateral estoppel.

V. Motions for Summary
Judgment

Having disposed of Fugro=s preliminary standing issue and NWC=s collateral estoppel argument, we now turn to whether the trial court
erred by granting Fugro=s and NWC=s motions for summary judgment. 


A. Standard of Review








In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.

When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant's
favor.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant=s position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).

The summary judgment will be
affirmed only if the record establishes that the movant has conclusively proved
all essential elements of the movant=s cause of action or defense as a matter of law.  Clear Creek Basin, 589 S.W.2d at
678.  Furthermore, when a movant asserts
alterative grounds in support of a motion for summary judgment and the trial
court does not specify the ground upon which it granted the motion, the
judgment must be upheld if we hold that any one of the grounds is meritorious.  See Western Invs., Inc. v. Urena, 162
S.W.3d 547, 550 (Tex. 2005).  

B. AAs Is@ Provision








As discussed above, Fugro
asserted four alternative grounds in support of its summary judgment motion,
while NWC asserted only one ground in support of its motion.  In their first two issues the Haires assert
that the trial court erred by granting summary judgment to NWC and Fugro based
on the Aas is@ language of
the sales contract.  Because both Fugro
and NWC argue that the Aas is@ provision entitles them to summary judgment, we shall first analyze
those arguments to determine if the granting of summary judgment can be upheld
on that ground.  In other words, we must
determine whether the Aas is@ clause contained in the sales contract between the Haires and
Prudential Relocation bars the Haires from suing NWC and Fugro.  

1. Applicable Law 

By purchasing a residence Aas is,@ a buyer
agrees to undertake his own evaluation of the bargain and accept the risk that
his evaluation might be wrong.  Prudential
Ins. Co. of Am. v. Jefferson Assoc., Ltd., 896 S.W.2d 156, 161 (Tex.
1995).  Such an evaluation on the part of
the buyer constitutes a new and independent basis for the purchaseCone that disavows any reliance upon a seller=s representations absent proof of a fraudulent misrepresentation or
concealment of information by the seller. 
Id. at 162.  See also
Monet v. PERA, 877 S.W.2d 352, 359 (Tex. App.CDallas 1994, no writ) (section 154 of the Restatement (Second) of
Contracts states that a party bears the risk of a mistake if the risk is
allocated to him by agreement or if he knowingly treats his limited knowledge
of the facts surrounding the mistake as sufficient);  Restatement
(Second) of Contracts ' 154 (1981).








2. Application 

Both NWC and Fugro rely on Larsen
v. Carlene Langford & Assocs., Inc.,  41 S.W.3d 245 (Tex. App.CWaco 2001, pet. denied), in support of their assertions that the Aas is@ provision
governs their cases.  In Larsen,
the plaintiffs explicitly agreed to accept a property in its present condition
without requiring any repairs by the seller and that they had made their own
inspection.  Noting that courts are to
assume that the parties intended every contractual provision to have some
meaning, the court held that by including these clauses in the sales documents
that both parties signed, the plaintiffs were not relying on any statement by
Langford regarding the condition of the property.  Id. at 252B53 (citing Schluinberger Tech. Corp. v. Swanson, 959 S.W.2d
171, 180 (Tex. 1997)).

We agree with NWC=s argument that the Haires are bound by their agreement.  Moreover, we do not dispute that the Haires and
the seller of the home intended every provision of their contract to have some
meaning.  However, the Haires= contract was not with NWC or Fugro, and as such, cannot be
determinative in the present case for the reasons explained below.  Therefore, NWC and Fugro=s reliance on Larsen is misplaced.  








Here, the Haires are not
suing the seller of their home, but instead are suing the developer and
geotechinical engineering firm of the subdivision, neither of whom were parties
to the sales contract.  Every case cited
by NWC and Fugro deals with the contractual relationship between a buyer and a
seller. Neither NWC nor Fugro has pointed us to any authority, nor have we discovered
any, that supports the application of a contractual provision to noncontracting
parties such that the Haires would be precluded from suing NWC and Fugro.  As such we cannot overrule the Haires= issues based on that argument.   
       








Furthermore, we cannot
construe NWC or Fugro to be third party beneficiaries of the sales
contract.  A third‑party
beneficiary contract cannot be created by implication.  MCI Telecomm. Corp. v. Tex. Util. Elec.
Co., 995 S.W.2d 647, 651 (Tex. 1999). 
Therefore, a third‑party beneficiary will not be recognized unless
that intention is clearly written or evidenced in the contract.  Id. 
Thus, A[t]he fact
that a person is directly affected by the parties= conduct, or that he >may have a substantial interest= in a contract=s enforcement,
does not make him a third party beneficiary.@  Loyd v. ECO Res., Inc.,
956 S.W.2d 110, 134 (Tex. App.CHouston [14th Dist.] 1997, no writ). 
Consequently, the law presumes parties contract for themselves unless it
Aclearly appears@ that they
intended a third party to benefit from the contract.  MCI Telecomm., 995 S.W.2d at 651.  AIf there is any reasonable doubt as to an intent to confer a direct
benefit, the third‑party beneficiary claim must fail.@  MJR Corp. v. B & B
Vending Co., 760 S.W.2d 4, 11 (Tex. App.CDallas 1988, writ denied).

There is no evidence that the
sales contract the Haires signed was in any way intended to benefit NWC or
Fugro.  Therefore, because NWC and Fugro
were not parties to the sales contract and were not third party beneficiaries
of that contract, we hold that the Aas is@ provision
of the contract was not an available defense for either NWC or Fugro.  

NWC also asserts that it is Aaxiomatic@ that its
duty can be no greater than that of the seller. 
However, NWC cites to no authority, nor have we found any, that supports
this assertion.  Therefore, we reject
this argument.   

Thus, we hold the Aas is@ provision
was not an appropriate ground on which to grant summary judgment.   

3. Result

Accordingly, we sustain the
Haires= first issue as to both NWC and Fugro. 
Because we hold that the Aas is@ provision
is inapplicable to this case, we need not consider the Haires= argument under their second issue that they were not a sophisticated
party in regards to the sales contract.








When reviewing a summary
judgment granted on specific grounds, the summary judgment can only be affirmed
if the ground on which the trial court granted relief is meritorious.  Cincinnati Life Ins. Co. v. Cates, 927
S.W.2d 623, 625B26 (Tex.
1996).  Because NWC asserted the Aas is@ provision
of the sales contract as its sole ground for summary judgment, we construe the
trial court=s granting
of summary judgment as based on that specific ground.  See id.  Therefore, we hold that the Haires= claims against NWC are not barred by the Aas is@ provision
nor collateral estoppel and reverse and remand the trial court=s granting of summary judgment in favor of NWC.  

Furthermore, we also hold
that Fugro=s motion for
summary judgment could not have been properly granted based on the Aas is@ provision
of the sales contract.  We shall now
consider whether Fugro=s additional
grounds can support the trial court=s granting of summary judgment.     


C. Negligence Claims 

As one of its grounds for
summary judgment Furgo asserted that it had no duty to the Haires, thus
defeating their negligence causes of action. 
We must affirm the trial court=s granting of summary judgment as to the negligence claims because the
Haires failed to challenge Fugro=s no-duty argument on appeal.  See
Scott v. Galusha, 890 S.W.2d 945, 948 (Tex. App.CFort Worth 1994, writ denied).  


D. Implied Warranty of Good and
Workmanlike Performance








In their final issue the
Haires contend that the trial court erred by granting Fugro=s motion for summary judgment as to the Haires= implied warranty claims under the DTPA.  Fugro responds that Texas law does not
recognize an implied warranty cause of action against design professionals and
that the Haires= DTPA claims
are barred by the professional services exemption of section 17.49(c) of the
Act.  

Assuming Texas law does
recognize an implied warranty cause of action against design professionals and
that the Haires claims are not barred by section 17.49(c), questions we need
not decide, Fugro=s motion for
summary judgment can still be upheld. 

1. Applicable Law 








The Texas Supreme Court
defines good and workmanlike as Athat quality of work performed by one who has the knowledge, training,
or experience necessary for the successful practice of a trade or occupation
and performed in a manner generally considered proficient by those capable of
judging such work.@  Melody Home Mfg. Co. v. Barnes, 741
S.W.2d 349, 354 (Tex. 1987).  One of the
purposes behind the implied warranty that services be performed in a good and
workmanlike manner is the protection of the helpless consumer who takes what he
gets because he does not know enough technically to test or judge what is
before him.  See DiMiceli v.
Affordable Pool Maint., Inc., 110 S.W.3d 164, 173 (Tex. App.CSan Antonio 2003, no pet.); Sears, Roebuck & Co. v. Nichols,
819 S.W.2d 900, 904 (Tex. App.CHouston [14th Dist.] 1991, writ denied).  Therefore, the implied warranty of good and
workmanlike performance is not breached in those circumstances where a consumer
is advised as to the need of certain repairs and the consequences of failing to
make them.  See DiMiceli, 110
S.W.3d at 173; Nichols, 819 S.W.2d at 904.  In DiMiceli,
DiMiceli contracted with Affordable Pool Maintenance (AAPM@) to do some
repair work.  DiMiceli, 110 S.W.3d
at 166.  After some disagreement, APM
sued DiMiceli; who in turn counterclaimed asserting breach of the implied
warranty of good and workmanlike performance, among other things.  Id. at 167.  The evidence at trial reflected that APM
advised DiMiceli about the necessity of having APM perform repairs, explained
the consequences to DiMiceli of APM not performing the repairs, and DiMiceli=s insistence to not follow APM's advice.  Id. at 173.  In light of these facts the court held that
DiMiceli could not recover for his breach of warranty claim.  Id. at 173B74.   

2. Application








Although DiMiceli involved
a claim against the contracting party who had advised the complainant regarding
the needed repairs, we find the general principles of law espoused there to be
equally applicable here.   Even though  Fugro did not contract with or advise the
Haires of anything, the Haires had knowledge of the need of certain repairs and
the consequences of failing to make them. 
Although the Haires had standing to sue because their complained of
damages occurred after their purchase of the residence, their pre-purchase
knowledge nevertheless bars them from surviving summary judgment on their
breach of implied warranty claim.  See
id. at 173; Nichols, 819 S.W.2d at 904.          The
summary judgment evidence showed that prior to purchase, the Haires were aware
of the potential foundation problems not only in the subdivision, but in the
very residence they were buying.  This
awareness is evidenced by the Haires= receipt of the original homeowner=s disclosure, which detailed foundation concerns in the subdivision
and a copy of George Perdue=s report on the foundation noting previous foundation movement and
resulting damage to the house.  Moreover,
the Haires even retained their own inspector, who examined the foundation and
offered his assessment regarding the foundation, the maintenance that would be
required, and other needed repairs. 
Hence, the Haires were on notice that without proper maintenance and
repairs there was the potential for structural problems with their
residence.   

Therefore, we hold that the
implied warranty of good and workmanlike manner was not breached due to the
Haires= knowledge prior to purchasing the residence.  Accordingly, the trial court did not err in
granting summary judgment in favor of Fugro on the Haires= breach of implied warranty claims under the DTPA.  We overrule the Haires= third issue.

 








VI. Conclusion

We affirm the trial court=s grant of summary judgment in favor of Fugro, but we reverse and
remand the trial court=s grant of
summary judgment in favor 

of NWC.  

 

BOB MCCOY

JUSTICE

 

PANEL A:   CAYCE, C.J.; WALKER and MCCOY, JJ.

 

WALKER,
J. dissents without opinion.

 

DELIVERED:
February 22, 2007

 











[1]These are the same foundation
concerns alleged to be at issue in this case. 





[2]This
is not to say that the Haires= pre-purchase knowledge is
irrelevant, an issue subsequently addressed in this opinion, just that it is
not determinative on the issue of standing.