COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-107-CV

MARK HAIRE AND KAREN HAIRE APPELLANTS

V.

NATHAN WATSON COMPANY APPELLEES

AND FUGRO SOUTH, INC.

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

In three issues, Mark Haire and Karen Haire (collectively the “Haires”) assert that the trial court erred in granting Fugro South, Inc.’s (“Fugro”) and Nathan Watson Company’s (“NWC”) motions for summary judgment.

II.  Factual and Procedural Background

This is the case of the floundering foundations.  In October 2001, the Haires purchased a home at 6202 Snow Ridge Court in the Hunter Pointe subdivision of Arlington.  The Haires bought the residence in “as is” condition from Prudential Relocation.  Sovereign Homes Corporation (“Sovereign”) built the residence in question.  NWC was the developer of the subdivision and according to NWC, it had no contractual relationship, or any other relationship for that matter, with the Haires, and had no role in the construction of the residence or its foundation.  According to the Haires, NWC, as developer, had the duty of preparing the individual lots so that they could adequately support a home.  Moreover, the Haires claim that providing these services gave rise to the implied warranty that the Haires’ lot would be prepared in a good and workmanlike manner. 

The Haires alleged that in late February and early March 2002, they began having structural problems with their home, including cracks in the walls, uneven floors, and doors that would not close properly.  Subsequent investigations revealed excessive swelling of the soils beneath the home, and that the home was not designed and constructed in a manner that would accommodate this excessive swelling.  The Haires claimed that because of these design and construction failures, their home sustained major and irreparable damages to its foundation.

Hunter Pointe subdivision contains numerous homes that have likewise experienced serious foundation problems, resulting in substantial and extensive repairs for those homes.  Fugro was the geotechnical engineering firm hired to perform soil analysis of the Hunter Pointe subdivision, including the Haires’ residence, in the initial development stages of the subdivision.  This professional analysis purported to serve as a basis for the foundation design of the homes within the subdivision.

The Haires’ sales contract contained “as is” language in both the body of the agreement and the attached “rider.”  By entering into the sales contract, the Haires agreed in three separate places to purchase the residence “as is.”  Also enclosed with the sales contract were (1) the original homeowner’s disclosure, which detailed foundation concerns in the neighborhood,
(footnote: 1) and (2) a copy of a report on the foundation by structural engineer George Purdue noting previous foundation movement and resulting damage to the house.  Finally, the Haires retained their own inspector, who examined the foundation and offered his assessment regarding the foundation and the maintenance that would be required.

The language in the Haires’ contract, utilizing a Texas Real Estate Commission (TREC) form, states the following:

PROPERTY CONDITION . . .

 . . . D.  ACCEPTANCE OF PROPERTY CONDITION: (check one box only):

[  ] (1) In addition to any earnest money . . . .

[X] (2) Buyer 
accepts the Property in its present condition
; provided Seller, at Seller’s expense, shall complete the following repairs and treatment: 
REFER TO PRUDENTIAL RELOCATION RIDER
.  [Emphasis added.]

The rider incorporated into the Haires’ sales contract contains additional “as is” language.  Specifically, section 2 of Prudential’s rider to the purchase agreement (“rider”) states the following:

Condition of Premises: Buyer understands that Seller is a relocation management company . . . .  The Property . . . being sold and purchased [is] not new, and [is] 
being sold “as is” 
-in [its] present condition.  
Buyer acknowledges that Buyer is not relying on any representations, statements, guarantees or warranties concerning the Property, made by anyone
, prior or subsequent to closing, including but not limited to, representations regarding . . . the condition of the Property . . . .  [Emphasis added.]

Further, section 5 of the rider states the following:

Buyer’s Duty to Inspect/Test: Although 
the Property is being sold “as is” -- in its present condition
, Buyer has the right to inspect or to have the Property inspected by others on Buyer’s behalf to determine the existence of defects, if any.  [Emphasis supplied.]

On September 3, 2003, the Haires filed suit against NWC and Fugro, parties with whom they had no prior relationship.  Fugro filed its answer on October 23, 2003, and NWC filed its original answer on January 8, 2004.  On February 20, 2004, the Haires filed their second amended original petition in which they alleged that NWC and Fugro were negligent and breached implied warranties under the Texas Deceptive Trade Practices Act (“DTPA”).

Fugro filed its motion for summary judgment on July 12, 2005, and as grounds for the motion argued that “(1) the “as is” language of the sales contract precludes recovery; (2) there is no implied warranty for professional services under Texas law; (3) the DTPA claims are barred by the professional services exemption of section 17.49(c) of the DTPA; and (4) Fugro has no duty to the Haires, thus barring their negligence action.”  The Haires filed a response to that motion on October 14, 2005.  Following a hearing, the trial court granted Fugro’s motion for summary judgment on November 15, 2005.  Fugro’s no-duty ground relating to the negligence claim has not been argued on appeal.   After the granting of Fugro’s motion for summary judgment, NWC filed its own motion for summary judgment on November 15, 2005, and as its single ground for the motion, argued that the “as is” language of the sales contract precluded recovery by the Haires.  After a hearing on NWC’s motion, the court granted summary judgment to NWC, and a final order was signed on February 27, 2006.  This appeal followed.

III.  Standing

Preliminarily, Fugro asserts that the Haires do not have standing in this matter because they did not own the property at the time the alleged injury occurred.  

A.  Standard of Review

Standing is a necessary component of subject matter jurisdiction.  
Tex. Ass'n of Bus. v. Tex. Air Control Bd.
, 852 S.W.2d 440, 445–46 (Tex. 1993); 
Exxon Corp. v. Pluff
, 94 S.W.3d 22, 26 (Tex. App.—Tyler 2002, pet. denied).
  
Subject matter jurisdiction is essential to the authority of a court to decide a case.  
Tex. Air Control Bd.
, 852 S.W.2d at 445–46. 
 Whether a trial court has subject-matter jurisdiction is a question of law subject to de novo review.  
See Mayhew v. Town of Sunnyvale
, 964 S.W.2d 922, 928 (Tex. 1998), 
cert. denied
, 526 U.S. 1144 (1999); 
 Pluff
, 94 S.W.3d at 26
.  Accordingly, we conduct a de novo review of a trial court's determination of standing.   
Mayhew
, 964 S.W.2d at 928.   

B.  Injury to Property

A person has standing to sue when he is personally aggrieved by the alleged wrong.  
Nootsie v. Williamson County Appraisal Dist
., 925 S.W.2d 659, 661 (Tex. 1996).  A person has standing if (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) he has a direct relationship between  the alleged injury and the claim sought to be adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact, either economic, recreational, environmental, or otherwise; or (5) he is an appropriate party to assert the public’s interest in the matter, as well as his own.  
Nausler v. Coors Brewing Co.
, 170 S.W.3d 242, 249 (Tex. App.—Dallas 2005, no pet.).  Stated differently, to have standing, there must be a real controversy among the parties which will be actually determined by the judicial declaration sought.  
Tex. Workers’ Compensation Comm. v. Garcia
, 893 S.W.2d 504, 517
–
18 (Tex. 1995).

We now quote at length from a sister court’s discussion in 
Exxon Corporation v. Pluff
:

[W]e must determine that Pluff had a cause of action for injury to the property.

A cause of action accrues when a plaintiff first becomes entitled to file a lawsuit based upon a legal wrong attributed to a defendant.  
Generally, a cause of action for injury to real property accrues when the injury is committed.
  The right to sue for the injury is a personal right that belongs to the person who owns the property at the time of the injury.
  Therefore, without express provision, the right does not pass to a subsequent purchaser of the property.
  Consequently, a mere subsequent purchaser cannot recover for an injury committed before his purchase.

94 S.W.3d at 26
–
27 (citations omitted)
.

C.  Application

The Haires alleged that several months after they purchased their home they began having structural problems in their house.  Thus, the damages the Haires complain of occurred 
after 
they purchased the residence, and, therefore, they owned the property at the time of the injury.
(footnote: 2)  

After reviewing the requirements for standing, we hold that the Haires alleged to have sustained a damage resulting from wrongful acts of Fugro, that there is a direct relationship between these alleged injuries and the claim asserted, that the Haires owned the property in question at the time the injuries occurred; and therefore had a personal stake in the controversy, and that the alleged wrongdoing caused the Haires’ damages.  Hence, the Haires have standing in this matter and Fugro’s preliminary issue is overruled.

IV.
 
Collateral Estoppel 

Because it also presents a threshold question we shall next address NWC’s assertion that the Haires are prevented from suing because of collateral estoppel.  NWC bases this argument on the assertion that the Haires were somehow in privity with the homebuilder Sovereign.  Sovereign previously sued NWC regarding the Hunter Pointe subdivision, and NWC filed a cross action against Fugro asserting indemnity.  The end result was that Sovereign lost at trial.  

NWC’s claim of collateral estoppel fails for several reasons.  First, under Texas Rule of Civil Procedure 94, collateral estoppel must be affirmatively pled.  
Tex. R. Civ. P.
 94.  Here it was not.  Furthermore, the Haires’ home has not been the subject of any prior lawsuits.  

Moreover, we cannot envision any rationale that would place the Haires in privity with Sovereign.  Privity connotes those who are in the law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right.  
Amstadt v. U.S. Brass Corp.
, 919 S.W.2d 644, 653 (Tex. 1996)
.  However, privity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same facts.  
Ayre v. J.D. Bucky Allshouse, P.C.
, 942 S.W.2d 24, 27 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

Here, the Haires did not purchase the residence from Sovereign and had no other relationship with it whatsoever.  Thus, we are unable to say that the Haires’ connection to Sovereign, if any, was such that their interests were identical.  
See Amstadt
, 919 S.W.2d at 653.  Furthermore, just because the Haires may have been interested in the same questions or proving the same facts as Sovereign, this alone does not establish privity.  
See Ayre
, 942 S.W.2d at 27.

Therefore, we hold that the Haires were not in privity with Sovereign and, thus, their claims against NWC are not barred by collateral estoppel.

V. Motions for Summary Judgment

Having disposed of Fugro’s preliminary standing issue and NWC’s collateral estoppel argument, we now turn to whether the trial court erred by granting Fugro’s and NWC’s motions for summary judgment.  

A. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
Sw. Elec. Power Co., 
73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.
  Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).
  
Evidence that favors the movant’s position will not be considered unless it is uncontroverted.  
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant’s cause of action or defense as a matter of law.  
Clear Creek Basin
, 589 S.W.2d at 678.  Furthermore, 
w
hen a movant asserts alterative grounds in support of a motion for summary judgment and the trial court does not specify the ground upon which it granted the motion, the judgment must be upheld if we hold that any one of the grounds is meritorious.  
See Western Invs., Inc. v. Urena
, 162 S.W.3d 547, 550 (Tex. 2005). 
 

B. “As Is” Provision

As discussed above, Fugro asserted four alternative grounds in support of its summary judgment motion, while NWC asserted only one ground in support of its motion.  In their first two issues the Haires assert that the trial court erred by granting summary judgment to NWC and Fugro based on the “as is” language of the sales contract. 
 Because both Fugro and NWC argue that the “as is” provision entitles them to summary judgment, we shall first analyze those arguments to determine if the granting of summary judgment can be upheld on that ground.  
In other words, we must determine whether the “as is” clause contained in the sales contract between the Haires and Prudential Relocation bars the Haires from suing NWC and Fugro.  

1. Applicable Law 

By purchasing a residence “as is,” a buyer agrees to undertake his own evaluation of the bargain and accept the risk that his evaluation might be wrong.  
Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd.
, 896 S.W.2d 156, 161 (Tex. 1995).  Such an evaluation on the part of the buyer constitutes a new and independent basis for the purchase—one that disavows any reliance upon a seller’s representations absent proof of a fraudulent misrepresentation or concealment of information by the seller.  
Id.
 at 162.  
See also Monet v. PERA
, 877 S.W.2d 352, 359 (Tex. App.—Dallas 1994, no writ) (section 154 of the Restatement (Second) of Contracts states that a party bears the risk of a mistake if the risk is allocated to him by agreement or if he knowingly treats his limited knowledge of the facts surrounding the mistake as sufficient);  
Restatement (Second) of Contracts
 § 154 (1981).

2. Application 

Both NWC and Fugro rely on 
Larsen v. Carlene Langford & Assoc
s., 
Inc.
,  41 S.W.3d 245 (Tex. App.—Waco 2001, pet. denied), in support of their assertions that the “as is” provision governs their cases.  In 
Larsen,
 the plaintiffs explicitly agreed to accept a property in its present condition without requiring any repairs by the seller and that they had made their own inspection.  Noting that courts are to assume that the parties intended every contractual provision to have some meaning, the court held that by including these clauses in the sales documents that both parties signed, the plaintiffs were not relying on any statement by Langford regarding the condition of the property.  
Id
. at 252
–
53 (citing 
Schluinberger Tech. Corp. v. Swanson
, 959 S.W.2d 171, 180 (Tex. 1997)).

We agree with NWC’s argument that the Haires are bound by their agreement.  Moreover, we do not dispute that the Haires and the seller of the home intended every provision of their contract to have some meaning.  However, the Haires’ contract was not with NWC or Fugro, and as such, cannot be determinative in the present case for the reasons explained below.  Therefore, NWC and Fugro’s reliance on 
Larsen
 is misplaced.  

Here, the Haires are not suing the seller of their home, but instead are suing the developer and geotechinical engineering firm of the subdivision, neither of whom were parties to the sales contract.  Every case cited by NWC and Fugro deals with the contractual relationship between a buyer and a seller. 
Neither NWC nor Fugro has pointed us to any authority, nor have we discovered any, that supports the application of a contractual provision to noncontracting parties such that the Haires would be precluded from suing NWC and Fugro.  As such we cannot overrule the Haires’ issues based on that argument.    
 

Furthermore, we cannot construe NWC or Fugro to be third party beneficiaries of the sales contract.  A third-party beneficiary contract cannot be created by implication.  
MCI Telecomm. Corp. v. Tex. Util. Elec. Co.
, 995 S.W.2d 647, 651 (Tex. 1999).  Therefore, a third-party beneficiary will not be recognized unless that intention is clearly written or evidenced in the contract.  
Id.  
Thus, “[t]he fact that a person is directly affected by the parties’ conduct, or that he ‘may have a substantial interest’ in a contract’s enforcement, does not make him a third party beneficiary.”  
Loyd v. ECO Res., Inc.
, 956 S.W.2d 110, 134 (Tex. App.—Houston [14th Dist.] 1997, no writ).  Consequently, the law presumes parties contract for themselves unless it “clearly appears” that they intended a third party to benefit from the contract.  
MCI Telecomm.
, 995 S.W.2d at 651.  “If there is any reasonable doubt as to an intent to confer a direct benefit, the third-party beneficiary claim must fail.”  
MJR Corp. v. B & B Vending Co.
, 760 S.W.2d 4, 11 (Tex. App.—Dallas 1988, writ denied).

There is no evidence that the sales contract the Haires signed was in any way intended to benefit NWC or Fugro.  Therefore, because NWC and Fugro were not parties to the sales contract and were not third party beneficiaries of that contract, we hold that the “as is” provision of the contract was not an available defense for either NWC or Fugro.  

NWC also asserts that it is “axiomatic” that its duty can be no greater than that of the seller.  However, NWC cites to no authority, nor have we found any, that supports this assertion.  Therefore, we reject this argument.   

Thus, we hold the “as is” provision was not an appropriate ground on which to grant summary judgment.   

3. Result

Accordingly, we sustain the Haires’ first issue as to both NWC and Fugro.  Because we hold that the “as is” provision is inapplicable to this case, we need not consider the Haires’ argument under their second issue that they were not a sophisticated party in regards to the sales contract.

When reviewing a summary judgment granted on specific grounds, the summary judgment can only be affirmed if the ground on which the trial court granted relief is meritorious.  
Cincinnati Life Ins. Co. v. Cates,
 927 S.W.2d 623, 625–26 (Tex. 1996).
  Because NWC asserted the “as is” provision of the sales contract as its sole ground for summary judgment, we construe the trial court
’
s granting of summary judgment as based on that specific ground.  
See id.
  Therefore, we hold that the Haires’ claims against NWC are not barred by the “as is” provision nor collateral estoppel and reverse and remand the trial court’s granting of summary judgment in favor of NWC.  

Furthermore, we also hold that Fugro’s motion for summary judgment could not have been properly granted based on the “as is” provision of the sales contract.  We shall now consider whether Fugro’s additional grounds can support the trial court’s granting of summary judgment.   
   

C. Negligence Claims 

As one of its grounds for summary judgment Furgo asserted that it had no duty to the Haires, thus defeating their negligence causes of action.  We must affirm the trial court’s granting of summary judgment as to the negligence claims because the Haires failed to challenge Fugro’s no-duty argument on appeal.  
See Scott v. Galusha
, 890 S.W.2d 945, 948 (Tex. App.—Fort Worth 1994, writ denied).   

D. Implied Warranty of Good and Workmanlike Performance

In their final issue the Haires contend that the trial court erred by granting Fugro’s motion for summary judgment as to the Haires’ implied warranty claims under the DTPA.  Fugro responds that Texas law does not recognize an implied warranty cause of action against design professionals and that the Haires’ DTPA claims are barred by the professional services exemption of section 17.49(c) of the Act.  

Assuming Texas law does recognize an implied warranty cause of action against design professionals and that the Haires claims are not barred by section 17.49(c), questions we need not decide, Fugro’s motion for summary judgment can still be upheld. 

1. Applicable Law 

The Texas Supreme Court defines good and workmanlike as “that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work.”
  
Melody Home Mfg. Co. v. Barnes
, 741 S.W.2d 349, 354 (Tex. 1987).  One of the purposes behind the implied warranty that services be performed in a good and workmanlike manner is the protection of the helpless consumer who takes what he gets because he does not know enough technically to test or judge what is before him.  
See DiMiceli v. Affordable Pool Maint.
,
 Inc.
, 110 S.W.3d 164, 173 (Tex. App.—San Antonio 2003, no pet.)
; Sears, Roebuck & Co. v. Nichols
, 819 S.W.2d 900, 904 (Tex. App.—Houston [14th Dist.] 1991, writ denied).  Therefore, the implied warranty of good and workmanlike performance is not breached in those circumstances where a consumer is advised as to the need of certain repairs and the consequences of failing to make them.  
See DiMiceli
, 110 S.W.3d at 173; 
Nichols
, 819 S.W.2d at 904. 
 In 
DiMiceli
, DiMiceli contracted with Affordable Pool Maintenance (“APM”) 
to do some repair work.  
DiMiceli
, 110 S.W.3d at 166. 
 After some disagreement, APM sued DiMiceli; who in turn counterclaimed asserting breach of the implied warranty of good and workmanlike performance, among other things.  
Id.
 at 167.  The evidence at trial reflected that APM advised DiMiceli about the necessity of having APM perform repairs, explained the consequences to DiMiceli of APM not performing the repairs, and DiMiceli’s insistence to not follow APM's advice.  
Id.
 at 173.  In light of these facts the court held that DiMiceli could not recover for his breach of warranty claim.  
Id. 
at 173–74.   

2. Application

Although 
DiMiceli 
involved a claim against the contracting party who had advised the complainant regarding the needed repairs, we find the general principles of law espoused there to be equally applicable here.   Even though  Fugro did not contract with or advise the Haires of anything, the Haires had knowledge of
 the need of certain repairs and the consequences of failing to make them.  Although the Haires had standing to sue because their complained of damages occurred after their purchase of the residence, their pre-purchase knowledge nevertheless bars them from surviving summary judgment on their breach of implied warranty claim.  
See id. 
at 173; 
Nichols
, 819 S.W.2d at 904. 
 
 
The summary judgment evidence showed that prior to purchase, the Haires were aware of the potential foundation problems not only in the subdivision, but in the very residence they were buying.  This awareness is evidenced by the Haires’ receipt of 
the original homeowner’s disclosure, which detailed foundation concerns in the subdivision and a copy of George Perdue’s report on the foundation noting previous foundation movement and resulting damage to the house.  Moreover, the Haires even retained their own inspector, who examined the foundation and offered his assessment regarding the foundation, the maintenance that would be required, and other needed repairs.  Hence, the Haires were on notice that without proper maintenance and repairs there was the potential for structural problems with their residence.   

Therefore, we hold that 
the implied warranty of good and workmanlike manner was not breached due to the Haires’ knowledge prior to purchasing the residence.  Accordingly, the trial court did not err in granting summary judgment in favor of Fugro on the Haires’ breach of implied warranty claims under the DTPA.  We overrule the Haires’ third issue.

VI. Conclusion

We affirm the trial court’s grant of summary judgment in favor of Fugro, but 
we reverse and remand the trial court’s grant of summary judgment in favor 

of NWC.  

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; WALKER and MCCOY, JJ.

WALKER, J. dissents without opinion.

DELIVERED: February 22, 2007

FOOTNOTES
1:
These are the same foundation concerns alleged to be at issue in this case. 

2:
This is not to say that the Haires’ pre-purchase knowledge is irrelevant, an issue subsequently addressed in this opinion, just that it is not determinative on the issue of standing.