

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| RANCHERO ESPERANZA, LTD., | § | No. 08-14-00152-CV |
| Appellant/Cross-Appellee, | § | Appeal from the |
| v. | § | 112th District Court |
| | § | |
| MARATHON OIL COMPANY, | § | of Crockett County, Texas |
| Appellee/Cross-Appellant. | § | (TC#10-07-07204-A) |
| | § | |

## **O P I N I O N**

This case involves the well-established rule in Texas that a cause of action for injury to land is a personal right belonging to the person who owns the property at the time of injury, and that a mere subsequent purchaser does not have standing to recover for injuries committed before his purchase. Here, Marathon Oil Company plugged and abandoned Well 812 in 1989 and ceased all activity as an operator on the property in 1999. Ranchero Esperanza, Ltd. purchased the property in 2004. In July 2008, Well 812 began leaking salt water onto the surface of the land, apparently due to injection activity being conducted nearby. Ranchero Esperanza alleges that Marathon's negligence in plugging Well 812 in 1989 allowed the salt water to reach the surface and was a proximate cause of the surface damages around the well.

On traditional summary judgment, the trial court determined that Ranchero Esperanza as a subsequent purchaser of the property did not have standing to assert its claims for negligence, trespass, and nuisance. We conclude the trial court erred, because the surface damage from Well 812 was an injury that occurred in July 2008 when Ranchero Esperanza was the owner of the property. We also conclude, however, that the trial court erred in denying Marathon's alternative ground for summary judgment based on statute of limitations. Accordingly, we reverse the trial court's judgment dismissing Ranchero Esperanza's claims for lack of standing and render judgment that Ranchero Esperanza take nothing because its claims are barred by the statute of limitations.

## BACKGROUND

In December 2004, Ranchero Esperanza bought a ranch in Crockett County, Texas, consisting of approximately thirty-two sections of land. In addition to the surface estate, Ranchero Esperanza owned an undivided one-half interest in the Trinity Aquifer under the property.[1] Well 812, the well at issue in this appeal, is located on one of the two most westerly sections of the ranch, both of which are included in the Olson Unit.

The Olson Unit was formed by Marathon Oil in 1965 to implement secondary recovery of hydrocarbons through water injection. Most of the wells within the Olson Unit were drilled in the 1940s and 1950s by Plymouth Oil or Midland Oil Company. Well 812 was drilled by Midland Oil Company in 1957. In 1989, Marathon Oil plugged and abandoned Well 812, utilizing a contractor for the plugging operations who had been approved by the Texas Railroad Commission

---

[1] At the time suit was filed, the other half interest in the Trinity Aquifer was owned by Southwest Royalties, Inc., which Esperanza initially joined as an involuntary party-plaintiff to the lawsuit. Southwest Royalties subsequently conveyed its one-half interest to Ranchero Esperanza and was dismissed from the lawsuit.

(RRC) and who performed the plugging operations in accordance with procedures approved in advance by the RRC.

Marathon Oil sold and quit operating the Olson Unit in 1999. The Olson Unit was subsequently acquired and operated by Aspen Operating Company, LLC in 2004.

On July 20, 2008, Aspen noticed a large amount of salt water flowing from Well 812. Aspen worked to stop the flow of brine, and cleaned and remediated the area surrounding Well 812. Ranchero Esperanza alleged that it did not discover the leak until eight days later, on July 28, 2008, when its foreman, Ken Hartman, saw men and equipment in the area of Well 812 and went over to investigate. Mr. Hartman testified that his attention was elsewhere at the time, but had he driven over to the Well 812 area a week earlier, he might have discovered the leak.

Aspen later determined that one of its nearby producing wells, Well 711, had a subsurface leak in its downhole tubing and casing, causing large volumes of salt water to leak out of its wellbore and traverse through a subsurface salt formation to Well 812. After Aspen had begun injecting salt water under pressure into the producing reservoir in the Olson Unit, salt water had exited Well 711 and apparently traversed underground from Well 711 and entered Well 812 well bore, traversed up the well bore, and exited holes in the surface casing above a subsurface depth of 50 feet, then traversed to the ground surface.

When Aspen re-entered Well 812 in 2008, it did not find a plug at the surface casing shoe in the well, although a plug had previously been spotted and tagged there in 1989 when the well was plugged. Aspen also discovered that the salt water leaking from Well 711 towards Well 812 had over time washed out a large cavern just below the surface casing shoe. In its efforts to re-plug Well 812, Aspen spotted in the well more than fifty-nine truckloads of gravel and three

3

thousand sacks of cement in the cavern, but was unable to fill the cavern and establish circulation in the well. Ranchero Esperanza filed suit on July 27, 2010, against Marathon Oil, Aspen, and others. In its Third Amended Petition, which was the live pleading at the time of summary judgment, Ranchero Esperanza asserted claims against Marathon Oil and Aspen for negligence, trespass, and nuisance. Ranchero Esperanza sued for both surface damages and damages to the aquifer "resulting from Aspen's and Marathon's failure to properly manage and operate the wells on Ranchero Esperanza property." Among other allegations, Ranchero Esperanza alleged that "brine from Well 812 polluted the surface of the ranch, killing vegetation over several acres." Ranchero Esperanza raised the discovery rule in response to Marathon Oil's assertion of limitations, and claimed the "problem with the Olson Unit wells on Ranchero Esperanza did not become apparent until the Ranchero Esperanza foreman, Ken Hartman, saw an uncontained flow of brine from the Olson Unit Well 812 on July 28, 2008."

Ranchero Esperanza also claimed additional problems with several other wells, including Well 907. Ranchero Esperanza alleged that its discovery of casing leaks in other wells demonstrated "that the problem that became apparent at Wells 812 and 907 is a field-wide phenomenon[.]"[2] As damages, Ranchero Esperanza sought $1.5 million "for remediation of brine contamination below Wells 812 and 907, $1.6 million for monitoring all the Olson Unit wells on the property for ten years, $3.7 million for diminution in the value of the property due to environmental stigma, and unspecified damages for reduction in the value of the aquifer due to contamination.

---

[2] Ranchero Esperanza asserted that well files and cement logs revealed that 19 of the 39 Olson Unit wells on their ranch "have had casing leaks during the time the Olson Unit was operated by Marathon and Aspen[,]" which "is evidence of the corrosive environment in the Olson Unit[.]"

Marathon Oil filed a hybrid motion for summary judgment arguing in part that it was entitled to traditional summary judgment because:  (i) Ranchero Esperanza lacked standing to assert claims against Marathon Oil; (ii) Ranchero Esperanza's claims were barred by the statute of limitations; and (iii) Marathon Oil had plugged Well 812 in accordance with applicable RRC rules and regulations, and thus, had no liability for damages arising from any alleged improper plugging.[3]  The trial court granted Marathon's motion on the ground Ranchero Esperanza "lacks standing to assert claims against Marathon," and denied the motion in all other respects.  The trial court dismissed all of Ranchero Esperanza's claims against Marathon due to Ranchero Esperanza's "lack of standing to assert such claims[.]"[4]  Marathon filed a conditional cross-appeal preserving its right to appeal the trial court's denial of its alternative grounds for summary judgment.

## DISCUSSION

On appeal, Ranchero Esperanza contests the dismissal of its claims.  Ranchero Esperanza contends the trial court erred when it concluded that Ranchero Esperanza did not have standing to sue Marathon for improperly plugging Well 812.  In particular, Ranchero Esperanza contends that it had standing to sue for the surface damages arising from Well 812 because that injury did not occur until July 2008, after it had already acquired the property.  We agree.

### Standard of Review

We review the trial court's grant of summary judgment de novo.  *Shell Oil Co. v. Writt*,

---

[3] Aspen also filed a motion for summary judgment.  Marathon adopted by reference essentially all of the arguments and evidence in Aspen's motion.

[4] The trial court denied Aspen's motion for summary judgment, and severed Ranchero Esperanza's claims against Marathon to make a final judgment as to Marathon.  The trial court entered a separate order abating Ranchero Esperanza's claims against Aspen pending the final outcome of this appeal.

__S.W.3d__, 2015 WL 2328678, at *3 (Tex. May 15, 2015); *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). The evidence is viewed in the light most favorable to the nonmovant. *Shell Oil Co.*, 2015 WL 2328678, at *3; *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). In reviewing the record, we indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in favor of the nonmovant. *Shell Oil Co.*, 2015 WL 2328678, at *3; *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012).

*Standing*

Standing is a component of subject-matter jurisdiction. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008) ("A court has no jurisdiction over a claim made by a plaintiff without standing to assert it."). As a prerequisite to subject-matter jurisdiction, a lack of standing may be raised in a motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). The movant for summary judgment bears the burden to establish the absence of standing. *Roskey v. Texas Health Facilities Comm'n*, 639 S.W.2d 302, 303 (Tex. 1982) (per curiam); *La Tierra de Simmons Familia, Ltd. v. Main Event Entm't, LP,* No. 03-10-00503-CV, 2012 WL 753184, at *4 (Tex.App. – Austin Mar. 9, 2012, pet. denied).[5] We therefore must determine if Marathon established that Ranchero Esperanza lacked standing as a matter of law. *See STICO Mut. Ins. Co., RRG v. Advanced Polymer Coatings, Inc.,* 412 S.W.3d 56, 58 n.1 (Tex.App. – El Paso 2013, no pet.) ("When a defendant moves for summary judgment based on a lack of standing, it must conclusively establish the defense as a matter of law."); *La Tierra de Simmons Familia,* 2012 WL 753184, at *4.

---

[5] *See also Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (stating that in reviewing a plea to the jurisdiction, the defendant has the burden to show that the trial court lacks jurisdiction); *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012) (stating that a trial court must grant a plea to the jurisdiction if the defendant presents undisputed evidence that negates the existence of the trial court's jurisdiction).

"It is well established that a cause of action for injury to land is a personal right belonging to the person owning the property at the time of injury, and a mere subsequent purchaser cannot recover for an injury committed before his or her purchase." *La Tierra de Simmons Familia,* 2012 WL 753184, at *5. "For more than 100 years, this Court has recognized that a cause of action for injury to real property accrues when the injury is committed. The right to sue is a personal right that belongs to the person who owns the property at the time of the injury, and the right to sue does not pass to a subsequent purchaser of the property unless there is an express assignment of the cause of action." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.,* 331 S.W.3d 419, 424 (Tex. 2010) (citations omitted); *see Vann v. Bowie Sewerage Co., Inc.*, 127 Tex. 97, 90 S.W.2d 561, 562–63 (1936) ("Where injury to land results ... the right of action for all the damages resulting from the injury accrues to the owner of the land at the time the thing that causes the injury commences to affect the land.").[6]

A subsequent landowner may assert a cause of action for pre-existing injuries only if there is an express assignment of the cause of action. *See, e.g., Emerald Oil*, 331 S.W.3d at 424; *Cook v. Exxon Corp.*, 145 S.W.3d 776, 780 (Tex.App. – Texarkana 2004, no pet.). Ranchero Esperanza does not contend that it obtained an express assignment of any causes of action from the prior owner when it purchased the property. Therefore, Ranchero Esperanza had standing to assert its claims in this lawsuit only if the injury occurred after it acquired the property in December 2004, "either because that is when the first injury occurred or because a new injury occurred." *See La Tierra de Simmons Familia,* 2012 WL 753184, at *5.

---

[6] *See also Boerschig v. Southwestern Holdings, Inc.,* 322 S.W.3d 752, 767 (Tex.App. – El Paso 2010, no pet.); *Exxon Corp. v. Pluff*, 94 S.W.3d 22, 27 (Tex.App. – Tyler 2002, pet. denied); *Senn v. Texaco, Inc.*, 55 S.W.3d 222, 225 (Tex.App. – Eastland 2001, pet. denied); *Lay v. Aetna Ins. Co.,* 599 S.W.2d 684, 686 (Tex.Civ.App. – Austin 1980, writ ref'd n.r.e.).

Both Marathon and Ranchero Esperanza agree that the overarching issue in this case is when a cause of action accrued for the alleged injury to the property. The date a cause of action accrues is normally a question of law. *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011); *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004); *see Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57 (Tex. 2015). Generally, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *Etan Indus., Inc.*, 359 S.W.3d at 623; *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003).

Ranchero Esperanza argues that although Marathon Oil negligently plugged Well 812 in 1989, no legal injury from that negligence occurred until July 2008 when salt water flowed to the surface near Well 812. Ranchero Esperanza asserts that when it bought the property in December 2004, there was nothing affecting the land around Well 812, but that "a cause of action accrued for the first time" when Well 812 began to flow salt water to the surface in July 2008; therefore, "Esperanza, as owner of the land, had standing to assert that cause of action."

In contrast, Marathon Oil contends that any cause of action accrued immediately "at the time of the allegedly improper plugging in 1989," and that Ranchero Esperanza lacked standing because a cause of action did not pass when it purchased the property in 2004. Marathon Oil recognizes that it is the person who owns the property "at the time of the injury" who has standing to sue. Indeed, Marathon Oil cites to numerous cases holding that it is the time of the injury that controls who has standing. *See, e.g., Exxon Corp.*, 331 S.W.3d at 424 ("a cause of action for injury to real property accrues when the injury is committed"); *Vann,* 90 S.W.2d at 562-63 ("Where injury to land results … the right of action for all the damages resulting from the injury

8

accrues to the owner of the land at the time the thing that causes the injury commences to affect the land."). Marathon Oil contends that the legal injury here occurred contemporaneously with its alleged deficient plugging of Well 812 in 1989.

To help clarify the distinction between when a cause of action accrues immediately at the time the wrongful act is committed and when it accrues later, Ranchero Esperanza relies on the analysis of the Austin Court of Appeals in *Zidell v. Bird*, 692 S.W.2d 550 (Tex.App. – Austin 1985, no pet.). There, the Court was attempting to determine when a legal malpractice claim accrued for purposes of the statute of limitations. *Id*. at 553. In doing so, the Court explained that the "legal injury rule" is applied "to determine when a cause of action accrues in cases where the defendant's conduct is separated in time from the harm which it causes the plaintiff." *Id*. at 554. The "central idea of the rule is that the plaintiff's cause of action accrues when the defendant's conduct first becomes 'unlawful' as to the plaintiff under the law applicable to the circumstances of the case." *Id*. The Court reviewed and compared "lawful acts" cases (involving conduct for which there was no immediate right of action under the applicable law) with "unlawful acts" cases (involving conduct for which there was an immediate right of action under the applicable law). *Id*. at 554-55. Ultimately, the Court concluded "[t]he distinctions to be drawn seem fine indeed and the decisions are not easy to reconcile." *Id*. at 555.

The one consistency we discern from the case law is that before a cause of action accrues there must be – at a minimum – some injury, "be the damage however slight." *See Houston Water-Works Co. v. Kennedy*, 70 Tex. 233, 236, 8 S.W. 36, 37 (1888). Indeed, the landowner-standing cases demonstrate that there can be a delay between the wrongful act and the first resulting injury, and any cause of action does not accrue until the first injury occurs.

9

For instance, in *Haire v. Nathan Watson Co.*, 221 S.W.3d 293 (Tex.App. – Fort Worth 2007, no pet.), new homeowners sued the geotechnical engineering firm that had performed the soil analysis years before during the initial development stages of the subdivision. The court held the homeowners had standing to bring claims against the geotechnical engineering firm, because the structural damage to their home due to the excessive swelling of the soils beneath their home arose after they had purchased the home. *Id.* at 298. Likewise, the Texas Supreme Court recognized in *Vann v. Bowie Sewerage Co.*, 127 Tex. 97, 90 S.W.2d 561, 562 (1936), that for purposes of standing, an injury to the land accrues: "to the owner of the land at the time *the thing that causes the injury commences to affect the land*. In legal contemplation, the injury to the land occurs at that time." (emphasis added). The landowners in *Vann* were held not to have standing because the "nuisance of which the Vanns complain had already injured said land when Vann bought it[.]" *Id.* at 563; *see also La Tierra de Simmons Familia*, 2012 WL 753184, at *5 (recognizing that a subsequent landowner can have standing to sue "either because that is when the first injury occurred or because a new injury occurred").

Although a limitations case, *Geochemical Surveys v. Dietz*, 340 S.W.2d 114 (Tex.Civ.App. – Austin 1960, writ ref'd n.r.e.), is instructive. There, owners of a farm sued an oil well lessee in 1958 for destroying their water wells by negligently disposing of salt water in unlined earthen pits on the farmers' property and adjoining lands between 1952 and 1957. The defendant argued that the owners' cause of action accrued when the salt water was first deposited into the earthen pits. *Id.* at 116. The *Dietz* court held that the acts of the lessee "in depositing salt water in the earthen tanks … did not constitute an invasion of appellees' property, were not necessarily injurious to it, and they, of themselves, gave appellees no cause of action." *Id.* at 117. Rather, the injury

10

sustained by the landowners "was the pollution of their well. Prior to this injury appellees had no cause of action." *Id.*

In contrast, *Houston Water-Works v. Kennedy*, 70 Tex. 233, 8 S.W. 36 (1888), represents a situation in which the cause of action accrued immediately upon the commission of the wrongful act because the injury occurred concurrently with that act. In installing a water pipe in Kennedy's building, the Water Works cut away a portion of an arch to make way for the pipe. *Id*. at 37. The arch was not open to view, and the cutting was unknown to Kennedy. *Id*. The cutting of the arch removed support for one corner of the building, which years later caused settling of the building and serious property damage. *Id*. at 36-37. The Court held that Kennedy's cause of action accrued immediately when the arch was cut because Kennedy suffered a legal injury when the unauthorized hole was drilled through the supporting arch without his permission. *Id*. at 37.

Ranchero Esperanza, on the other hand, did not sustain any surface damages from Marathon Oil's alleged deficient plugging of Well 812, until salt water was released from Well 812 onto the surface of its property in July 2008. Any cause of action for those damages did not accrue until that time – a time at which Ranchero Esperanza was the owner of the property.

Marathon Oil asserts that we must classify Ranchero Esperanza's surface damages arising from Well 812 as "permanent," and that this compels the conclusion that any cause of action accrued in 1989 because any "breach occurred and any associated injury commenced, if at all, when Well 812 was allegedly improperly plugged in 1989."

In making this argument, Marathon Oil candidly admits that the courts are split on whether the characterization of an injury as temporary or permanent is relevant to the issue of standing.[7]

---

[7] *See La Tierra de Simmons Familia, Ltd.,* 2012 WL 753184, at *9 n.9 ("There is some disagreement among the courts of appeals about whether the characterization of an injury as temporary or permanent is even relevant to the issue of

We need not decide this issue, which has been described as "one of the oldest and most complex in Texas law." *Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264, 268 (Tex. 2004). Even when an injury to land has been characterized as permanent, the Texas Supreme Court has repeatedly recognized that the underlying cause of action accrues when the wrongful act effects an injury. *See, e.g., Schneider Nat'l Carriers,* 147 S.W.3d at 270 ("A permanent nuisance claim accrues when injury *first* occurs or is discovered[.]"); *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 153 (Tex. 2012) ("A permanent nuisance claim accrues when the condition first 'substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities.'") (quoting *Schneider Nat'l Carriers, Inc.,* 147 S.W.3d at 269–70); *see also Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex. 1984) (cause of action for permanent injury to land accrues on discovery of first actionable injury); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) ("a cause of action can generally be said to accrue when the wrongful act effects an injury"). These cases recognize that there can be, and often is, a delay between the wrongful act and the resulting injury.

For instance, in *Tennessee Gas Transmission Co. v. Fromme*, 153 Tex. 352, 269 S.W.2d 336 (1954), the landowner contended Tennessee Gas was negligent in permitting water containing harmful chemicals from its compressor station to flow upon her land. *Id*. at 337. In determining that the landowner's claim was barred by limitations, the Supreme Court applied the rule that when there is a direct invasion of one's property of a permanent character, the original invasion is the

standing."); *Senn,* 55 S.W.3d at 226 ("The distinction between temporary and permanent damages is meaningless with respect to the issue of standing."); *Pluff,* 94 S.W.3d at 28 (rejecting argument that injury must be characterized prior to consideration of standing, citing *Senn)*; *Cook,* 145 S.W.3d at 779 ("characterization of an injury as temporary or permanent is not relevant under these circumstances"); *see also Denman v. CitgoPipeline* Co., 123 S.W.3d 728, 734-35 (Tex.App. – Texarkana 2003, no pet.) (rejecting argument that alleged injuries were temporary, citing *Senn* and *Pluff*); *but see Denman v. SND Operating, L.L.C.,* No. 06-04-00061-CV, 2005 WL 2316177, *4 (Tex.App. – Texarkana Sept. 23, 2005, no pet.) ("we disagree that the distinction between temporary and permanent injuries is necessarily irrelevant" to question of standing).

injurious act, and that in such cases, the cause of action accrues and limitations begins to run from the date of the first invasion. *Id.* It is apparent from the decision in *Fromme* that the landowner's claim was barred by limitations not because her claim accrued when the compressor station was built. The mere erection of the plant did not constitute an invasion of landowner's rights. Rather, the landowner's cause of action accrued when the plant first began discharging affluent onto her land, more than two years before the landowner filed suit. *Id*. at 337-38 ("the evidence introduced in the case conclusively reveals that respondent's legal rights were invaded the moment water from the petitioner's plant began to flow upon her land."). Likewise, Ranchero Esperanza's legal rights were invaded, and its causes of action accrued, the moment the salt water from Well 812 began to flow upon its land.

Marathon Oil contends that Texas courts have repeatedly held that causes of action for the alleged improper plugging of an oil and gas well always accrue at the time of the plugging. All of the cases cited by Marathon Oil in support of this proposition, however, involve situations where the injury to the property had occurred before the plaintiff-landowner owned the property. For example, *Brooks v. Chevron USA Inc.*, No. 13-05-029-CV, 2006 WL 1431227, at *7 (Tex.App. – Corpus Christi-Edinburg May 25, 2006, pet. denied), involved alleged contamination of soils from pollution or contaminates generated by the oil and gas facilities or activities occurring before the purchase, a contention that "is undisputed and is also apparent from [plaintiff's] petition." Likewise, *Denman v. Citgo Pipeline Co.*, 123 S.W.3d 728, 730, 734 (Tex.App. – Texarkana 2003, no pet.), and *Denman v. SND Operating, L.L.C.*, No. 06-04-00061-CV, 2005 WL 2316177, at *5 (Tex.App. – Texarkana Sept. 23, 2005, no pet.), both involved unused pipelines and oil field equipment left on the property before the plaintiff-landowners purchase of the property, and soil

13

contamination arising from operations occurring before the plaintiff-landowners purchase of the property.

*Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 331 S.W.3d 419 (Tex. 2010), addressed whether "section 85.321 of the Texas Natural Resources Code allows a subsequent mineral lessee to maintain a cause of action against a prior lessee *for damages to the mineral interest that occurred prior to the time the subsequent lessee obtained its interest*." *Id*. at 420 (emphasis added). Thus, the very question being addressed in *Emerald Oil* assumed the damages and injuries occurred before the purchase. Further, the plaintiff's complaint in *Emerald Oil* was that when it tried to re-enter the wells plugged and abandoned by Exxon years before the purchase, it had difficulty because Exxon allegedly had improperly plugged the wells by placing considerable quantities of metal, refuse, environmental contaminates, non-drillable materials, and cut casings into the well shafts. *Id*. at 421. Thus, the *Exxon* case involved injuries to the wells themselves that occurred at the time the wells were plugged. In contrast, the surface damages alleged by Ranchero Esperanza involve surface damages arising from an allegedly deficient plugging that subsequently failed and allowed salt water to surface after the property was purchased by Ranchero Esperanza.

Ranchero Esperanza's causes of action for surface damages arising from the allegedly deficient plugging of Well 812 did not accrue in 1989 when Marathon Oil plugged the well, but rather accrued in July 2008 when the surface damages first resulted from the alleged deficient plugging. We believe the present case can be analogized to the building of a deficient dam that years later fails and floods the landowner's property. Even if the defendant was negligent in building the dam years before, the landowner's rights are not invaded, and his cause of action does

not accrue, until the dam actually fails and damages the property. In the present case, the prior landowner's rights were not invaded when Marathon Oil installed the plug in 1989, but rather the current landowner's rights were invaded in July 2008 when the plug allegedly failed and caused surface damages. Because Ranchero Esperanza owned the property at the time the first damages occurred from the improper plugging of Well 812, it had standing to sue for those particular surface damages. Accordingly, the trial court erred in granting summary judgment on the ground that Ranchero Esperanza lacked standing to sue. Ranchero Esperanza's sole issue on appeal is sustained.[8]

*Limitations*

This does not conclude our inquiry, however. Because we have concluded that the trial court erred in granting summary judgment on lack of standing, we must address Marathon Oil's conditional cross-points. As mentioned above, Marathon Oil also moved for traditional summary judgment on the ground that Ranchero Esperanza's claims were barred by the statute of limitations. While the trial court granted Marathon's motion on the ground Ranchero Esperanza lacked standing, it denied the motion in all other respects. Marathon filed a conditional cross-appeal preserving its right to appeal the trial court's denial of its alternative grounds for summary judgment.

The parties agree that all of Ranchero Esperanza's causes of action are subject to the two-year statute of limitations. Marathon Oil contends that it established limitations as a matter of law by showing that Aspen discovered the salt water leak at Well 812 on July 20, 2008. Marathon Oil asserts that this "injury" caused Ranchero Esperanza's surface damage claims to

---

[8] Because we hold that Ranchero Esperanza has standing to sue for surface damages arising from Well 812, we do not address its alternative argument that the trial court's ruling that it lacked standing violated the Open Courts Provision of the Texas Constitution.

accrue on July 20, 2008, at the latest, and that Ranchero Esperanza's claims are barred by limitations because it did not file suit until over two years' later on July 27, 2010. Marathon Oil also contends that the discovery rule is inapplicable to this case, and in any event Ranchero Esperanza's foreman, Ken Hartman, stated that while he did not discover the leak until July 28, 2008, when he saw men and equipment in the area of Well 812 and went over to investigate, he admitted that his attention was elsewhere at the time, and had he driven over to the Well 812 area a week earlier, he might have discovered the leak.

A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *KPMG Peat Marwick v. Harrison Cty Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). The defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised,[9] by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence, should have discovered the nature of its injury. *Id.* at 748.

We conclude that Marathon Oil proved as a matter of law that, at the latest, Ranchero Esperanza's causes of action accrued on July 20, 2008, when Aspen discovered salt water flowing onto the surface from Well 812. We also conclude that the discovery rule does not apply because the nature of the injury incurred – surface damages arising from salt water flowing from a well onto the surface – is not inherently undiscoverable. Because it is undisputed that Ranchero Esperanza did not file suit until July 27, 2010, which was over two years after its causes of action accrued, its claims are barred by limitations.

As a general rule, a cause of action accrues for limitations purposes when a wrongful act

---

[9] Ranchero Esperanza pleaded the discovery rule.

16

causes some legal injury, even if the fact of the injury is not discovered until later and even if all resulting damages have not yet occurred. *Murphy v. Campbell,* 964 S.W.2d 265, 270 (Tex. 1997). Marathon Oil's summary judgment proof established that on July 20, 2008, Aspen discovered a large amount of salt water flowing from Well 812 onto the surface. We have previously concluded that as a matter of law Ranchero Esperanza's causes of action accrued for purposes of standing on July 20, 2008, when Aspen discovered the salt water emerging from Well 812. Likewise, as a matter of law, July 20, 2008 is also the date Ranchero Esperanza's causes of action accrued for purposes of limitations. *See Etan Indus.*, 359 S.W.3d at 623 (for purposes of the statute of limitations, "a cause of action accrues when a wrongful act causes a legal injury") (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)). Marathon Oil thus met its burden to establish as a matter of law when Ranchero Esperanza's causes of action accrued.

It is undisputed that Ranchero Esperanza first filed suit on July 27, 2010, which was over two years' after its causes of action accrued. Thus, unless the discovery rule applies to toll the accrual of its causes of action, Ranchero Esperanza's claims are barred by limitations. The "discovery rule" is an exception to the general rule of accrual; when applicable, it provides that an action does not accrue until the plaintiff knew, or in the exercise of reasonable diligence should have known, of the wrongful act and resulting injury. *Murphy,* 964 S.W.2d at 270. Ranchero Esperanza argues that under the discovery rule its causes of action did not accrue until its foreman, Ken Hartman, discovered the leak on July 28, 2008, when he saw men and equipment in the area of Well 812 and went over to investigate, thereby making its filing timely on July 27, 2010.

The discovery rule has generally been applied in cases where the nature of the injury

17

incurred is "inherently undiscoverable" and the evidence of the injury is objectively verifiable. *Id.*; *S.V. v. R.V.,* 933 S.W.2d 1, 6 (Tex. 1996). "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V.,* 933 S.W.2d at 7. The Supreme Court explained in *Via Net, U.S. v. TIG Insurance Co.,* 211 S.W.3d 310 (Tex. 2006), that whether an injury is inherently undiscoverable is a legal question "decided on a categorical rather than case-specific basis; the focus is on whether a *type* of injury rather than a *particular* injury was discoverable." *Id.* at 314 (emphasis in original); *see also Hunt Oil Co. v. Live Oak Energy, Inc.,* 313 S.W.3d 384, 389 (Tex.App. – Dallas 2009, pet. denied).

We conclude that the type of injury alleged in this case – surface damages arising from salt water emerging from an oil well – is not inherently undiscoverable. Accordingly, the discovery rule does not apply to toll the accrual of Ranchero Esperanza's causes of action. Ranchero Esperanza's alleged injury involves tangible, visible things: oil and gas activities affecting the surface of the property. Whether surface damages have been incurred is apparent to a landowner by mere viewing. Surface damages are not hidden; they are in plain view. Further, diligence is required by the owner of the surface as to the operation of oil and gas leases on its land. "Inherently undiscoverable encompasses the requirement that the existence of the injury in not ordinarily discoverable, *even though due diligence has been used.*" *Computer Assocs. Int'l Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996) (emphasis added). Even on a large ranch, a diligent landowner keeping an eye on the oil and gas activities occurring on his land, could have discovered surface damages arising from salt water emerging from a well, within two years of its appearance on the surface. Simply put, surface damages arising from salt water emerging from a well are not inherently undiscoverable, because they are the type of injuries that could be discovered through

18

due diligence within a two-year limitations period.

Accordingly, the discovery rule does not apply, and Marathon Oil was not required to negate the discovery rule in order to establish that limitations barred recovery as a matter of law. The trial court thus erred in denying Marathon's alternative ground for summary judgment that Ranchero Esperanza's claims were barred by limitations. Marathon Oil's first conditional cross-point is sustained.[10]

## CONCLUSION

We conclude the trial court erred in granting summary judgment on lack of standing, because the surface damage from Well 812 was an injury that occurred in July 2008 when Ranchero Esperanza was the owner of the property. We also conclude that the trial court erred in denying Marathon's alternative ground for summary judgment based on statute of limitations, because Marathon established that defense as a matter of law. Accordingly, we reverse the trial court's judgment dismissing Ranchero Esperanza's claims for lack of standing and render judgment that Ranchero Esperanza take nothing because its claims are barred by the statute of limitations.

STEVEN L. HUGHES, Justice

July 24, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

---

[10] Because our ruling on limitations disposes of the case, we do not address whether the trial court erred in denying Marathon's other cross-point concerning its compliance with RRC regulations.